**In the United States District Court
for the District of Kansas**

―――――――――

Case Nos. 20-cr-40082-TC
18-cr-40109-TC
11-cr-40024-TC

―――――――――

United States of America,

*Plaintiff*

v.

Shannon J. Wright,

*Defendant*

―――――――――

**MEMORANDUM AND ORDER**

Shannon Wright is charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), which law enforcement located during a welfare check. In each of these three cases, Wright has moved to suppress the weapon because, he argues, it was located during an unlawful search. For the following reasons, his motions are denied.

**I**

**A**

On August 13, 2020, the Topeka Police Department ("TPD"), along with the local fire department and paramedics, responded to a

1

suspected medical emergency involving Defendant Shannon Wright.[1] During his interactions with Wright, TPD officer Gary Atchison discovered a handgun. *See generally* Doc. 27, Case No. 20-40082.[2]

Wright came to Atchinson's attention when responding to a 911 call concerning a possible medical emergency. The caller described an unknown man sitting hunched over in a vehicle, breathing in a shallow manner, and appearing unresponsive. *See* Tr. 5:25–7:17 & Gov. Ex. 1 (audio recording). When Atchison, the fire department, and paramedics arrived on scene, they found Wright in the condition described: in a parked vehicle, door open, head slumped forward, limbs in a neutral position, and either asleep or unconscious. Tr. 17:6–9, 22:14–23:6.

Atchison approached Wright to check for a pulse and attempted to communicate with Wright. Tr. 22:2–23:6 & Gov. Ex. 2 (body camera footage). Atchison located a pulse, but Wright did not awaken. Tr. 23:2–6. Atchison then performed a "sternum rub" on Wright, Tr. 23:7–26:24, which startled Wright awake.

Atchison announced who he was, that he was there to check on Wright's well-being, and Wright immediately calmed. Tr. 27:2–10 & Gov. Ex. 2. Atchison then suggested Wright allow paramedics to examine him, asked if he had any weapons in the vehicle, and performed a "visual pat-down" of the area immediately surrounding Wright. Tr. 27:11–29:20 & Gov. Ex. 2. It was understood between the paramedics and police department that the paramedics would not evaluate Wright until a responding officer—here, Atchison—made sure they could safely do so. Tr. 46:11–21, 48:24–49:5

---

[1] The Court conducted an evidentiary hearing on April 7, 2021. Defendant Wright was present, in person and through counsel of record. The Government presented two witnesses, FBI Task Force Officer Patrick Salmon and TPD Officer Gary Atchison. Three exhibits, Gov. Ex. 1 & 2 and Def. Ex. 100, were admitted into evidence. The parties largely agree on the facts, disagreeing primarily about their effect. To the extent there is any question, the Court—in light of the evidence presented—finds the facts as they are described herein.

[2] For simplicity, this Order cites only the motion filed in Case No. 20-40082, Doc. 27; Wright's companion motions can be found at Case No. 18-40109, Doc. 47, and Case No. 11-40024, Doc. 123.

As Atchison stood outside the open car door talking to Wright, he noticed what appeared to be a gun's trigger guard. Gov. Ex. 2 & Tr. 30:5–31:18. Atchison reached down, moving Wright's hand from the area where he saw the trigger guard, grabbed the firearm, and removed it from the vehicle so the paramedics could proceed. Gov. Ex. 2 & Tr. 32:7–33:2. Thereafter, Atchison learned Wright was prohibited from possessing the firearm, giving rise to the present charges and revocation proceedings against him.

**B**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures—of people, their homes, and their personal property—are presumed unreasonable when conducted without a warrant. *Id.*; *United States v. Karo*, 468 U.S. 705, 717 (1984). But that does not mean that every warrantless search or seizure is unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973); *see also Scott v. Harris*, 550 U.S. 372, 383 (2007) (noting that "ensuring public safety" is "the paramount governmental interest"); *Georgia v. Randolph*, 547 U.S. 103, 118 (2006) (distinguishing between intrusions to investigate and to protect).

In the event of a warrantless search or seizure, the Government may rebut the presumption of unreasonableness by showing that an exception to the warrant requirement applies. *Brigham City*, 547 U.S. at 403. While it is a defendant's burden to show the Fourth Amendment is implicated, once he carries that burden, the Government must prove the conduct in question was reasonable. *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020). For example, a warrantless search or seizure is reasonable when police officers are not seeking to ferret out crime but are instead on the scene to render emergency aid. *United States v. Najar*, 451 F.3d 710, 713 (10th Cir. 2006) (citing, among others, *Mincey v. Arizona*, 437 U.S. 385, 392–93 (1978), which recognized that the need to preserve life or avoid serious injury is justification for what would otherwise be an illegal search and noting that "the police may

seize any evidence that is in plain view during the course of their legitimate activities").[3]

## II

Wright argues that Atchison violated his Fourth Amendment rights in three ways: by searching his person, by seizing his person, and by searching his vehicle without a warrant. Based on these alleged violations, Wright argues that the firearm and related evidence should be suppressed not only in his new criminal case but also in his supervised release revocation proceedings.

Contrary to Wright's position, the search and seizure were reasonable in this situation. Atchison's interactions with Wright—meant to address an apparent health and safety need and not to investigate—were reasonable under the circumstances. As Atchison did not violate the Fourth Amendment, Wright's request to suppress that evidence is denied.

### A

Wright first asserts that Atchison searched and seized his person, in violation of his Fourth Amendment rights. Specifically, Wright complains that Atchison approached the vehicle where Wright was sleeping and placed his hand on Wright's neck and chest. Doc. 27, Case No. 20-40082 at 2, 8–9.

Wright's argument fails because the purpose of this encounter and contact was to check on his health and wellbeing, not to detain or investigate Wright for misconduct. *See Najar*, 451 F.3d at 715 (recognizing the multiple functions police play outside of criminal investigation, including rendering "aid [to] individuals who are in danger of physical harm . . . [or] cannot care for themselves"). To be a seizure, Atchison would have had to use a show of authority that in some way restrained Wright's liberty or physical force with the objectively demonstrated intent to restrain his movement. *See generally Torres v. Madrid*, 141 S. Ct. 989, 995, 998 (2021). That is not what occurred. Instead, Atchison rousted Wright awake so that the parametics could perform a welfare

---

[3] The Supreme Court is currently considering a similar issue. *See Caniglia v. Strom*, Case No. 20-157 (argued March 24, 2021).

check. That intentional application of force is not a Fourth Amendment seizure. *See id.*

In addition, the search Wright challenges was reasonable under the circumstances. The Government does not dispute that Atchison searched Wright or that he lacked a warrant. But not every warrantless search is unreasonable under the Fourth Amendment: "[B]ecause the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." *See Brigham City*, 547 U.S. at 403.

One such exception is to protect serious health or safety needs of an individual appearing to be in jeopardy. *Id.* This exception applies where the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others and the manner and scope of the search is reasonable. *Najar*, 451 F.3d at 718. That test is satsified here.

Atchison had an objectively reasonable basis to conclude that Wright was actively in medical distress or facing immediate risk of a serious medical event. He responded to the scene only because a 911 caller reported that Wright appeared to be in medical trouble. When Atchison arrived—with the fire department and paramedics—he found Wright in the condition the caller described: asleep or unconcious in an open vehicle, head slumped forward, unaware of people approaching his vehicle. These facts satisfy the first *Najar* factor.

The scope of Atchison's search was also reasonable under the circumstances. Wright complains that the search was unreasonable in manner and scope because Atchison approached him without a mask during the COVID-19 pandemic, physically touched him before attempting to rouse him verbally, and impermissibly placed hands on his neck and chest. Even if that choice was inconsistent with then-prevailing public health advice, it was not constitutionally unreasonable given the circumstances. *Najar* does not require an officer to take the least invasive route possible. It requires only that any action be objectively reasonable. *Cf. Najar*, 451 F.3d at 718. Faced with someone possibly unconscious and exhibiting shallow breathing (based both on the officer's observations and the 911 caller's report), Atchison did not act unreasonably when he quickly attempted to ascertain Wright's status (*e.g.*, by seeking his pulse) and to wake him by multiple means, including an effective sternum rub.

5

**B**

Once Wright became responsive, Atchsion visually scanned the area immediately surrounding Wright for weapons to make sure it was safe for the medical personnel to render aid. As Atchison's testimony, contemporaneous reports, and body camera footage demonstrate, Wright was in an unknown physical and mental state and appeared confused and disoriented. Thus, the presence of a weapon was a genuine safety concern for everyone on scene—Wright included.

Atchison conducted a visual examination only, which as the body camera footage shows, lasted mere seconds. He conducted this examination from outside the vehicle, looking through the open door only to identify objects within plain view. He did not look in the back seat, trunk, console, or any other area. Either before or during this visual sweep, Atchison spotted what he believed to be a trigger guard to a handgun lying next to Wright's leg and and near where Wright's right hand was resting. Believing it was a weapon, Atchison reached into the car, confirmed that what he saw was a trigger guard to a handgun, and removed the gun from the vehicle. His body camera footage shows Atchison did not fumble, grope, or feel around the surrounding area in the hopes of finding something incriminating. Instead, he reached directly and purposefully for the item that he saw. Tr. 32:7–18 & Gov. Ex. 2.

Wright's claim that this constituted an unreasonable search is contrary to existing law. Officers are permitted to temporarily seize a weapon seen in plain view when they are called to render public aid and are not investigating a potential crime. *See, e.g.*, *Arden v. McIntosh*, 622 F. App'x 707, 709 (10th Cir. 2015) (officer was justified in temporarily seizing firearms, seen in plain view during her "initial cursory search," for the duration of a suicide intervention call "in the interests of safety of the police and emergency-medical personnel during a community caretaking call"). It was imminently reasonable—and, therefore constitutionally permissible—under these circumstances for Atchsion to temporarily remove the weapon from the immediate surroundings. *United States v. Gordon*, 741 F.3d 64, 71 (10th Cir. 2014) ("Temporary seizures of persons or objects may be permissible when reasonably connected to the safety of officers, or the protection of others.") (internal citations omitted); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1138–41 (9th Cir. 2019) (concluding warrantless seizure of gun was reasonable following owner's mental health episode, in light of urgent

and substantial personal and public safety concerns); *cf. Mayfield v. Harvey Cty. Sheriff's Dept.*, 732 F. App'x 685, 687–88 (10th Cir. 2018) (concluding no violation occurred when officer temporarily seized a citizen's lawfully possessed gun after he confronted officers engaged in other pursuits).

### III

Wright asks the Court to suppress evidence not only in his new criminal case (Case No. 20-40082) but also in his supervised release revocation proceedings (Case Nos. 18-40109 & 11-40024). The argument is tenuous, given that the Supreme Court has declined to apply the exclusionary rule in parole revocations and the Tenth Circuit has refused suppression in probation revocations. *See Penn. Bd. Probation & Parole v. Scott*, 524 U.S. 357 (1998); *United States v. Finney*, 897 F.2d 1047 (10th Cir. 1990). But because Atchison did not violate the Fourth Amendment, the Court need not decide this issue.

### IV

For the foregoing reasons, the Motions to Suppress (Doc. 27, Case No. 20-40082; Doc. 47, Case No. 18-40109; Doc. 123, Case No. 11-40024) are each DENIED.

It is so ordered.

Date:  April 30, 2021    s/ Toby Crouse
　　　　　　　　　　　　　Toby Crouse
　　　　　　　　　　　　　United States District Judge